IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

                                :
NAPOLEAN T. ANNAN-YARTEY        :
                                :
     v.                         :  Civil Action No. DKC 10-1384
                                :
MONTGOMERY BOARD OF EDUCATION,  :
et al.                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action is a motion to dismiss filed by Defendants, the Board of Education of Montgomery County ("the Board") and individual board members. (ECF No. 6).[1] The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted.[2]

**I. Background**

On March 31, 2010, *pro se* Plaintiff Napolean T. Annan-Yartey commenced this action in the United States District Court

---

[1] The complaint incorrectly identifies the Board as "Montgomery Board of Education." The individual defendants are Board members Patricia O'Neill and Christopher Barclay. The complaint also names "VP Director of Procurements" and "John Does 1-10" as defendants.

[2] Also pending are Plaintiff's "Motion for Scheduling Order Expediting Disposition of Action" (ECF No. 18) and "Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction" (ECF No. 20). Because Defendants' motion to dismiss will be granted, these motions will be denied as moot.

for the District of Columbia. (ECF No. 1). On April 5, he filed a substantively-identical amended complaint, alleging breach of contract, conversion, fraud, and unjust enrichment. (ECF No. 3).[3] The amended complaint states that "[o]n or about July 11, 1989, [P]laintiff and [D]efendants . . . entered into an agreement whereby [P]laintiff agreed to supply the Board . . . with [m]edical [p]roducts." (*Id*. at ¶ 12). According to Plaintiff, the contract was in both oral and written form and was "to be performed in the County of Rockville, State of Maryland." (*Id*. at ¶ 11).[4] Plaintiff asserts that he performed under the contract by "suppl[ying] medical products to [D]efendants" (*id*. at ¶ 13), but Defendants failed to pay the contract price, thereby causing damages. He demands "$75,000 for breach of contract and the value of its performance" and

---

[3] The amended complaint lists six counts, numbered one through three and five through seven. The sixth count seeks a declaratory judgment that "under the terms of the July/11/1989 approval and agreement . . . Defendants owe Plaintiff the amount of $75,000 including 10% interest." (ECF No. 1, at 6). This count is indistinguishable from the count alleging breach of contract. In the seventh count, Plaintiff appears to allege that the prior counts apply to the individual defendants. Moreover, the body of the complaint makes mention of a number of other causes of action, including negligence, tortious interference with contract, and breach of fiduciary duty (*id*. at 1, ¶¶ 10, 42), but no additional factual support is provided. To the extent Plaintiff intended to raise these claims, they are insufficiently pled.

[4] Presumably, Plaintiff intended to state that performance was to occur in the City of Rockville, which is located in Montgomery County, Maryland.

2

"$250,000 [in] [p]unitive damages for [D]efendants' fraud, conversion . . . and [b]reach of [c]ontract." (*Id*. at 7).

On May 7, 2010, the district court in the District of Columbia, *sua sponte*, transferred the case to this court pursuant to 28 U.S.C. § 1406(a), stating "it appears that all of the defendants in this action reside in Maryland and that a substantial part of the events giving rise to the claims occurred in Maryland." (ECF No. 5).[5] On the same date, Defendants filed the pending motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), asserting that (1) the court lacks subject matter jurisdiction to consider the case, (2) Plaintiff's claims are time-barred, and (3) the Board is protected from the suit by sovereign immunity.[6] Plaintiff filed four sets of papers in opposition to this motion (ECF Nos. 10, 11, 12, 13) and two surreplies (ECF Nos. 15, 16).[7]

---

[5] While it may be true that all defendants are Maryland citizens, the amended complaint is silent as to the citizenship of any defendant.

[6] Defendants additionally argue that venue in the District of Columbia district court was improper, but that aspect of the motion was rendered moot by virtue of the transfer to this court.

[7] The court will consider Plaintiff's last amended opposition (ECF No. 13) as advancing the arguments he wishes to raise. It will not consider his surreplies, however, as he did not seek leave to file them, as required by Local Rule 105.2(a), nor did he provide any explanation as to why additional briefing was required.

**II. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

    **A.    Standard of Review**

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

    **B.    Analysis**

Although the civil cover sheet accompanying Plaintiff's complaint indicates federal question jurisdiction as the jurisdictional basis, the complaint itself raises only breach of contract and common law tort claims. Because there is no federal question presented, jurisdiction in federal court could only be proper if the requirements for diversity of citizenship are met; indeed, the district court in the District of Columbia shared this opinion, as it stated in its order transferring the

case that "federal jurisdiction is founded solely on diversity jurisdiction." (ECF No. 5, at 1).

Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists where there is complete diversity of citizenship among the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." A party seeking to invoke diversity jurisdiction bears the burden of demonstrating that these requirements are present. *See Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2nd Cir. 1998). Defendants contend that Plaintiff has not met this burden, as the amended complaint fails to demonstrate that the parties are diverse and the amount in controversy does not exceed the jurisdictional minimum.

"It is well established that diversity jurisdiction attaches only when all parties on one side of the litigation are of different citizenship from all of those on the other." *Stouffer Corp. v. Breckenridge*, 859 F.2d 75, 76 (8th Cir. 1988) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). When a plaintiff sues more than one defendant in a diversity action, he must meet the diversity requirements for each defendant or face dismissal. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). In the instant case, the amended complaint states that Plaintiff is a resident of the District of Columbia, but is silent as to the citizenship of any

5

of the defendants. While the Board is obviously a Maryland citizen – indeed, it is a state agency – the citizenship of the individual defendants is presently unknown. Thus, the amended complaint fails to demonstrate that the parties are diverse such that jurisdiction in federal court is proper.

If this were the only defect, it could very likely be cured by having Plaintiff amend his complaint to allege the citizenship of all the defendants. Unfortunately, granting leave to amend would be futile in this case because the amount in controversy requirement is not met. Ordinarily, the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith. *Wiggins v. North American Equitable Life Assur. Co.*, 644 F.2d 1014, 1016-17 (4th Cir. 1981). However, "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction." *Wiggins*, 644 F.2s at 1017 (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957)); *see also FLF, Inc. v. World Publs.*, 999 F.Supp. 640, 643-44 (D.Md. 1998) (citing *Wiggins*).

The amount of the contract, formed on July 11, 1989, was $10,586, Plaintiff has added interest accruing since that time to allege that $75,000 is at issue. By the express language of § 1332, the amount in controversy must *exceed* $75,000 and that

6

amount must be "exclusive of interest and costs." The amount of compensatory damages alleged by Plaintiff does not exceed the jurisdictional minimum and includes interest accruing over a twenty-one year period. While Plaintiff also claims entitlement to $250,000 in punitive damages, and such damages are typically included in the amount in controversy calculus, *see Biktasheva v. Red Square Sports, Inc.*, 366 F.Supp.2d 289, 295 (D.Md. 2005), the Fourth Circuit has cautioned that where a claim for punitive damages is relied upon to satisfy the amount in controversy requirement, such claims are to be "carefully examined," *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) (citing *Zahn v. International Paper Co.*, 469 F.2d 1033, 1033 n. 1 (2nd Cir. 1972), *aff'd*, 414 U.S. 291 (1973)).

As noted, Plaintiff seeks punitive damages related to his fraud, conversion, and breach of contract claims. In Maryland, however, punitive damages are not available in a pure action for breach of contract, even if the breach is malicious, as Plaintiff appears to allege. *See Munday v. Waste Mgmt. of N. Am.*, 997 F.Supp. 681, 685 (D.Md. 1998) (citing *St. Paul at Chase Corp. v. Mfrs. Life Ins. Co.*, 262 Md. 192 (1971)). With respect to tort claims, such as Plaintiff's claims for fraud and conversion, punitive damages may not be awarded "unless the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or

7

fraud, *i.e.*, 'actual malice.'" *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 460 (1992).

To sustain a claim of fraud under Maryland law, the complaint must allege (1) that a false representation was made; (2) that its falsity was known to the speaker at the time it was made with reckless indifference to the truth; (3) that the false representation was made for the purpose of defrauding the injured party; (4) that the injured party relied on the misrepresentation; and (5) that damages resulted. *See Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982). "[T]he defendant's actual knowledge of falsity, coupled with his intent to deceive the plaintiff by means of the false statement, constitutes the actual malice required to support an award of punitive damages." *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 234 (1995).

Allegations of fraud are subject to a heightened pleading standard. Generally, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz*, 534 U.S. at 513, which requires a "short and plan statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). "In alleging fraud or mistake," however, "a party must state with particularity the circumstances surrounding fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be

alleged generally." Fed.R.Civ.P.9(b). Failure to comply with the pleading requirement of Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir. 1999).

To satisfy the Rule 9(b) standard with respect to a claim alleging fraud, a plaintiff must specify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Keeney v. Larkin*, 306 F.Supp.2d 522, 527 (D.Md. 2003) (quoting *Harrison*, 176 F.3d at 784). Here, Plaintiff alleges, in relevant part, that Defendants "made [a] false representation to [him]" with the "intention to induce [him] to enter into [a] contract for procurement of Medical Products for the purpose of exploitation for their own financial gain and in essence, to steal the Merchandise." (ECF No. 3, at ¶¶ 24, 25). These allegations fall well short of the heightened pleading requirement of Rule 9(b). Plaintiff has not identified the content of the alleged misrepresentation; he has not specified the time or place that it occurred; nor has he indicated the specific defendant that made it. Plaintiff's allegations of fraud, therefore, are insufficient as a matter of law.

Plaintiff has similarly failed to state a claim for conversion. In *Hamilton v. Ford Motor Credit Co.*, 66 Md.App.

46, 64, *cert. denied*, 306 Md. 118 (1986), the Court of Appeals of Maryland explained:

> The law in Maryland concerning conversion says generally that conversion is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it. *Interstate Insurance Company v. Logan*, 205 Md. 583, 588-89, 109 A.2d 904 (1954); *Staub v. Staub*, 37 Md.App. 141, 142-43, 376 A.2d 1129 (1977). Maryland law also states specifically that in order to recover for conversion one must either have been in actual possession or have had the right to immediate possession. *Dungan v. Mutual Benefit Life Insurance Company of New Jersey*, 38 Md. 242, 249 (1873); *Lawrence v. Graham*, 29 Md.App. 422, 423-28, 349 A.2d 271 (1975).

In alleging conversion, here, Plaintiff contends that Defendants "became indebted to [him] in the sum of $75,000 for payment of [a] supply of [m]edical [p]roducts" and that Defendants "improperly refused to make payment." (ECF No. 3, at ¶¶ 18, 20). In other words, according to Plaintiff, the same conduct constituting the alleged breach of contract also gives rise to a conversion claim. "Failure by a contracting party to pay the contract price or debt, however, is not conversion, but merely breach of contract." *Brand Iron, Inc. v. Koehring Co.*, 595 F.Supp. 1037, 1040 (D.Md. 1984); *see also Wang Labs, Inc. v. Burts*, 612 F.Supp. 441, 446 (D.Md. 1984) (generally, "failure to pay a contractual debt is not the equivalent of conversion").

10

At its core, this is a garden-variety breach of contract action.[8] As noted, punitive damages are not available in an action for breach of contract. *See Munday*, 997 F.Supp. at 685. Because Plaintiff cannot, on these facts, establish a claim for fraud or conversion, nor can he otherwise show that Defendants acted with "actual malice," it is a "legal certainty" that he cannot recover punitive damages. *See Biktasheva*, 366 F.Supp.2d at 295. Thus, the prerequisites for diversity jurisdiction under § 1332 are not met, and this court is without subject matter jurisdiction to consider the affirmative defenses raised by Defendants.

**III. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[8] Plaintiff's unjust enrichment claim also cannot be sustained. "In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Janusz v. Gilliam*, 404 Md. 524, 537 (2008) (quotation marks omitted); *see also FLF, Inc.*, 999 F.Supp. at 642 ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.").